BERGER, Estate of, In re; CLAYTON, Exr., Plaintiff, v. UNITED STATES OF AMERICA, WASHINGTON, D. C., et.

Probate Court, Franklin County.

No. 129770. Decided June 13, 1950.

Guy Martin, Columbus, for Guilford T. Clayton, executor. Thomas C. Flanigan Jr., Asst. Atty Genl., Loren G. Windon, Asst. U. S. Attorney, Columbus.

## OPINION

By McCLELLAND, PJ.

This matter is presented to the Court on an Application for Authority to Distribute the remainder of the Estate of the deceased. By agreement of the parties a Statement of Facts has been submitted upon which facts the Court is asked to determine who is entitled to a small amount of money representing the amount for distribution in the estate of the decedent. The pertinent facts are as follows:

Daniel Berger and Angie Berger were husband and wife. On or about the 5th day of July 1938, the said husband and wife having qualified to receive assistance under the old age

pension law of Ohio, and being the owners of the property hereinafter mentioned, executed a deed to said property which contains the following language:

"KNOW ALL MEN BY THESE PRESENTS: That Angie Berger and Daniel Berger, Husband and Wife, of the Township of Clinton, County of Franklin and State of Ohio, in consideration of the money to be paid to Angie Berger and Daniel Berger, as a recipient of aid for the aged, as provided in §1359 GC, et seq., by the Division of Aid for the Aged in the Department of Public Welfare of the State of Ohio, through the Division of Aid for the Aged of Franklin County, do hereby Grant, Bargain, Sell and Convey to the said Division of Aid for the Aged in the Department of Public Welfare of the State of Ohio, as Trustee, its assigns and successors in trust, forever, the following Real Estate, situated in the County of Franklin, in the State of Ohio, and in the Township of Clinton and bounded and described as follows: (here follows description of property)"

This deed was duly witnessed and executed before a notary public and was filed for record on August 5, 1938, and recorded on August 31, 1938 in the record of mortgages of Franklin County, Ohio, Vol. 974, page 205.

The deed hereinbefore mentioned was executed and delivered to the Division of Aid by virtue of the provisions of §1359-6 GC, the first three paragraphs of which are as follows:

"Any applicant for or recipient of aid, or his or her spouse, who is the owner of any interest in real or personal property, excepting household goods, clothing and other personal effects, may convey, transfer or assign such property to the division of aid for the aged in trust, reserving to the recipient of aid and his or her spouse the right to use or reside upon any such real property for life; and upon the death of either, leaving a surviving wife or husband who is eligible for aid, the right of the survivor likewise to use or reside upon said real property for life. All taxes and assessment on such real property and all necessary expenses of keeping it in good condition and repair shall be paid by the person using or residing upon it.

"All property conveyed, transferred or assigned to and held by the division in trust, upon the death of the person or persons entitled to use or reside upon such property as above provided, may, in the discretion of the division, be sold by the division at public sale, and the proceeds applied in the following order; first, the cost of sale; second, all valid taxes and assessments and other secured claims which

were a lien upon said property at the time it was conveyed, transferred or assigned in trust to the division; third, repay to the treasurer of state for the general revenue fund all amounts paid under this act to the person who conveyed, transferred or assigned the property to the division and all such amounts paid to his or her spouse; fourth, all other valid debts in order according to law; and the balance, if any, to be distributed to the heirs or other persons by law entitled thereto.

"Provided, however, that after the death of a recipient of aid, upon the request of his surviving spouse, and heir, or other person lawfully entitled thereto, and when reimbursed to the full amount of aid paid as aforesaid, the division shall reconvey or transfer the property, or cancel and release the assignment and lien thereon, to said surviving spouse, or heirs or other persons by law entitled thereto."

The foregoing statute has been amended since the above date, but the foregoing text is as it existed at the time of the deed.

From the Statement of Facts it appears that the Division of Aid began their payments to the above named recipients in August, 1936. These payments continued to December, 1943, at which time the husband died. Up until that time the Division of Aid had paid to those recipients the sum of $2059.56, plus a funeral award in the amount of $125.00, making a total sum of $2184.56.

Angie Berger survived her husband and died on or about July 16, 1948. She received assistance from the Division of Aid from September 1938 to July 19, 1948, in the amount of $3485.80, plus $200.00 for expenses of last illness, and also another sum of $78.68, making a total sum of $3764.48.

When Daniel Berger died intestate Angie Berger was the sole and only heir to receive the entire interest in the property. Therefore when Angie Berger died she was the sole owner of all the interest which either or both of them had in the property.

Angie Berger left a will by the terms of which she bequeathed and devised all of her property to Guilford J. Clayton, and also named him the executor of her will. She also gave him power of sale of her personal property and real estate. The real estate was inventoried in her estate at a value of approximately $1700.00.

The claim of the United States of America arises out of the following facts. Subsequent to the death of Daniel Berger, Angie Berger his wife, contracted with The Storm King Com-

pany for certain improvements on the house on the property hereinbefore described, for the sum of $203.04, and gave her note for same. The note eventually became the property of The Morris Plan Bank of Cleveland, Ohio.

Angie Berger also on July 9th, 1946, signed an F. H. A. promissory note to the Modern Roofing and Siding Company for the sum of $494.28, and this note finally became the property of the First Discount Corporation and was later assigned to the United States Government.

Angie Berger also on August 23, 1946, executed another F. H. A. promissory note to a certain roofing company in the sum of $185.04, which note was later assigned to the United States Government.

The executor named in the will, acting under his apparent power, sold the real estate hereinbefore mentioned for the sum of $1000.00. Neither of the claimants are raising any question as to the sale. Certain debts have been paid with the approval of both claimants. Both claimants have filed their claims in compliance with the statutes of Ohio with reference to the filing of claims against decedents estates. There is left from the sale price of said property the sum of $311.55. The State of Ohio claims this money by virtue of its mortgage or trust deed. The United States Government claims the property by virtue of 31 U. S. C. A. page 191, which reads as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The reports of the United States Supreme Court contain a large number of decisions construing the foregoing statute. The United States Government is the claimant on the notes hereinbefore mentioned by virtue of the assignment thereof to The Federal Housing Administration.

The Supreme Court of the United States in the case of United States v. Summerlin, reported in 310 U. S. page 414,

and also in the case of United States v. Remund, reported 330 U. S. page 539, have held such a claim becomes a claim of the United States of America.

There is a long line of decisions holding that the priority of the United States takes precedence over tax claims of the various states and other subdivisions. There is also a number of decisions of the U. S. Supreme Court involving the claims of the United States and the priority thereof in Assignment for the benefit of creditors and in receiverships of insolvent debtors.

In our search of the authorities we have not been able to find a court decision on all fours with the question now before the Court. We do believe, however, that the fundamental principles have been established by the decision of the Supreme Court of the United States in the case of Illinois v. Campbell, reported in 329 U. S. page 362. The Court, on page 375, after discussing a great many cases summarizes the circumstances which must exist in order that the priority of the United States might be defeated. The Court uses the following language:

"The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are (1) the identity of the lienor, United States v. Knott, 298 U. S. 544, 549-551; (2) the amount of the lien, United States v. Waddill Co., 323 U. S. at 357-358; and (3) the property to which it attaches, United States v. Waddill Co., supra; New York v. Maclay, supra. It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity."

Now, applying these characteristics to the case now before the Court; there is no question as to the identity of the lienor, and there is no question as to the property to which it attaches. The recipients of the amounts paid by the Division of Aid gave a deed to the Division of Aid in order to secure the payments falling due in the future. A second element hereinbefore named is the only one in which there might be any doubt, and that is the amount of the lien. The relief paid to the recipients according to the law of Ohio is paid in monthly payments. The State of Ohio at any minute knew exactly the amount of money advanced which was secured by the trust deed. Had either or both of these recipients died, the records of the Division of Aid would show definitely the amount of money that had been advanced. In this respect this case differs from another case decided

by the Supreme Court of the United States where the United States of America was claiming priority over obligations owed to the State of Ohio for payroll taxes.

It is our opinion that the State of Ohio, through the Department of Aid for Aged, at all times knew definitely the amount of its claim, and therefore the second element as hereinbefore mentioned was present.

This Court has also examined the case of Postmaster General v. Robbins, reported in 19 Federal Cases, being Case Number 11314, in which decision we find the following language:

"In these cases it has been decided that the priority given by the law does not create a lien on the debtors estate, but merely makes the debt of the United States a privileged debt against the general assets of the debtor in the hands of his assignees or administrator, and rendering them personally liable, provided any other debt is paid before that due to the United States. * * * If the statute does not create a lien, it would seem it will not remove or supersede an existing lien, and this opinion is strongly intimated in the last case (Conrad v. Atlantic Ins. Company, 1 Pet. (26 U. S. 386) in which these acts have been brought to the notice of the supreme court. * * *"

From Vol. 28 American Jurisprudence, under the subject "Insolvency" at page 819, Section 73, we find the following:

"It is well settled that the priority statute does not create a lien upon the debtor's property in favor of the United States, but merely confers upon the government a right of priority in payment out of that property in the hands of the debtor's assignees or other representatives, under the conditions specified in the statute. It follows that if, before the right of priority of the United States accrues under the statute, the debtor parts with his property, either absolutely or conditionally by way of mortgage or other liens, or involuntary liens are acquired against the property, the priority of the United States does not attach to such property, and the claims of the transferee, mortgagee, or other lienee are superior to that of the United States; at least where the lien so created or acquired is a specific lien upon specific property as contra-distinguished from a lien upon all the property of the debtor. * * *"

It seems also that the time element or sequence of events should have some bearing on the mind of the Court in this matter. These two recipients began to receive their aid in 1936. They gave their deed in 1938. The husband did not die until 1943. At the time of his death the State had advanced over $2000.00. The obligations purchased by the United States of America, through the F. H. A. were not incurred until the year 1948. Almost the entire amount of the funds represented by the State of Ohio were furnished long before the claims of the United States of America came into existence.

It is therefore the opinion of this Court that the claim of the State of Ohio is prior to the claims of the United States of America and that the State of Ohio is entitled to the amount of money left for distribution in this estate.

An order may be drawn accordingly.